**DANIEL A. CROLEY (154386)**
FUTTERMAN DUPREE DODD CROLEY MAIER LLP
180 Sansome Street, 17th Floor
San Francisco, California 94104
Telephone: (415) 399-3840
Facsimile: (415) 399-3838
dcroley@fddcm.com

Attorneys for Defendant MICHAEL SOMOON
(erroneously named as Michael Samoon)

RADOSLOVICH | KROGH, PC
**FRANK M. RADOSLOVICH, State Bar No. 161457**
**DEREK C. DECKER, State Bar NO. 232243**
**MEGAN A. SHAPIRO, State Bar No. 270445**
701 University Avenue, Suite 100
Sacramento, CA 95825
Tel: 916.565.8161
Fax: 916.656.8170
E-mail: frank@radlegal.com
E-mail: derek@radlegal.com
E-mail: megan@radlegal.com
Attorneys for Plaintiff
CHRISTIAN RUIZ BAPTISTE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTIAN RUIZ BAPTISTE,<br><br>Plaintiff,<br><br>v.<br><br>LIDS; HAT WORLD, INC.; GENESCO, INC.; MICHAEL SAMOON; and DOES 1 through 5, inclusive,<br><br>Defendants. | Case No. C-12-5209 PJH<br><br>**DEFENDANT MICHAEL SOMOON'S AND PLAINTIFF CHRISTIAN RUIZ BAPTISTE'S JOINT STATEMENT RE DISCOVERY DISPUTE** |

Defendant Michael Somoon and Plaintiff Christian Baptiste hereby attest that they have met and conferred in person on September 20, 2013 (as well as in writing) regarding Plaintiff's refusal to withdraw the subpoenas to Somoon's other employers and all related issues.

Dated: October 3, 2013

s/Daniel A. Croley
Daniel A. Croley
Counsel for Defendant Michael Somoon

s/Derek C. Decker
Derek C. Decker
Counsel for Plaintiff Christian Ruiz Baptiste

FUTTERMAN DUPREE DODD CROLEY MAIER LLP

DEF MICHAEL SOMOON'S AND PLAINTIFF CHRISTIAN RUIZ BAPTISTE'S JOINT STATEMENT RE DISCOVERY DISPUTE
CASE NO. C 12-5209 PJH

October 3, 2013

Hon. Maria-Elena James
United States District Court
Northern District of California
San Francisco Courthouse, Courtroom B - 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

Re: *Baptiste v. LIDS, et al.*
U.S. District Court for the Northern District of California Case No. C-12-5209-PJH-MEJ

Dear Judge James:

The parties submit this joint statement regarding their discovery dispute over Plaintiffs' subpoenas to Defendant Michael Somoon's other employers.

Plaintiff is a former Hat World employee who worked at a LIDS retail store located on Market Street in San Francisco. Plaintiff was hired on November 29, 2007, as a part-time employee. Plaintiff was terminated by Hat World in October 2008 for alleged theft of company merchandise from the store where he worked. Mr. Baptiste has identified himself as "a dark skinned U.S. citizen of Puerto Rican and Haitian ancestry" and claims Somoon harassed him because Plaintiff was an African American. Complaint, ¶¶12, 14 & 32. On September 20, 2013, the parties met and conferred in person over this dispute.

## I. The Subpoenas in Dispute

On August 28, 2013, Plaintiff served subpoenas for the production of documents on three non-party companies: Orchard Supply Hardware Corporation ("Orchard"); OfficeMax, Inc. and GameStop, Inc. Each subpoena set the return date as September 17, 2013. In 2011 and 2012, Somoon managed a Orchard retail store in the San Jose area, with approximately 70 employees under his supervision. Somoon worked for OfficeMax from 2009 to 2011. He served as the General Manager for a store located in the San Jose area, supervising about 20 employees. Somoon worked for GameStop from 2006-2007, before his job at Hat World. He worked as GameStop's District Manager for Northern California, supervising 16 stores and more than 160 employees. Copies of the subpoenas are attached collectively as Exhibit A.

Each subpoena seeks documents evidencing "racial comments" by Somoon during his employment with these other companies, as well as any complaint made against him based on "racial comments" or "threats of violence."[1] The 15 categories of documents requested fall into three groups:

▪ Documents "relating to" "racial comments," "racial statements" or "racial slurs" made by Somoon during his employment (Request Nos. 1-3).

[1] The document requests are identical for each of the three subpoenas.



▪ Documents "relating to" "complaints made against Somoon" "about use of" "racial comments," "racial statements," and "racial slurs" (Request Nos. 4-6) or about the use or threat of violence by Somoon against any employee (Request Nos. 10-11) or the use of intimidation against any employee (Request No. 14).

▪Documents relating to any disciplinary actions against Somoon because of the foregoing (Request Nos. 7-9 and 12-13, 15).

## II. Defendant Michael Somoon's Position

Defendant Somoon was the District Manager for the LIDS store where Plaintiff worked. Somoon is alleged to have first met Plaintiff in July 2008. Plaintiff also alleges that on the three occasions where Somoon visited store where Plaintiff worked from July to October 2008, Somoon called Plaintiff a "nigger" and made other racial slurs derogatory of African-Americans, and ultimately recommended Plaintiff be terminated because of his race. (Complaint, ¶16) Somoon denies these allegations. Somoon asserts Plaintiff was terminated for theft which he confessed to in a statement written by him, in which he states "In my eleven months at the company (sic) I have left the store with hats that I did not pay for. I brought the hats back." Plaintiff asserts this confession was also coerced by a member of the San Francisco Police Department ("SFPD") who he alleges called him racial slurs, including nigger and monkey, while threatening to "break your fucking teeth." (Complaint, ¶20) Both of the responding officers were deposed and deny all of these allegations and confirmed they did not care whether or not Plaintiff signed any confession.

Around September 13, 2013, Plaintiff's counsel indicated he agreed to limit the subpoenas to racially derogatory statements against African Americans. This offer was insufficient so Somoon moved to quash on September 13, 2013. On September 19, 2013, Plaintiff counsel stated in email "I am inclined to withdraw the subpoena (sic) if you withdraw the motion (which I believe has been dismissed anyway). I'm not conceding any merit to the motion, or that the information is not relevant, but we have many other fish to fry right now." Plaintiff, however, never withdrew the subpoenas.

The subpoenas, as worded, are overbroad and beyond the scope of permissible discovery, as set by Rule 26. The subpoenas also fail to identify documents to be produced with "reasonable particularity." Moreover, the potential value of responsive documents is remote, as they would concern other employees, of other companies, in other circumstances and even with respect to other (i.e., non-African-American) protected groups. Such evidence, if any, is unlikely to be admissible or to lead to the discovery of admissible evidence. *See, e.g., Grayson v. O'Neill*, 308 F.3d 808, 816 (7th Cir. 2002) ("Evidence of generalized racism directed at others is not relevant unless it has some relationship with the employment decision in question."); *Kline v. City of Kansas City*, 175 F.3d 660, 668 (8th Cir. 1999) (holding that evidence of discrimination by defendant against women other than the plaintiffs would not tend to prove that the plaintiffs were discriminated against); *Callanan v. Runyun*, 75 F.3d 1293, 1298 (8th Cir. 1996) (same). This

view www.fddcm.com

"me too" evidence would not yield any inference that the stated reasons for Somoon's decision regarding Plaintiff were pretextual.[2]

The subpoenas at issue also potentially seek information which is protected by Somoon's right of privacy, as well as confidential information concerning Somoon's employment history. The privacy rights of the other employees involved, if any, also could be compromised.

Somoon contends that the subpoenas should be **quashed in their entirety**. In the alternative, he asks that the Court limit the subpoenas in scope to the use of racial slurs, directed at or about African-American coworkers. Plaintiff alleges that it was this racial group he identifies with and which Somoon apparently believed he was in at the time of the alleged racial harassment.

Somoon also requests that the documents be limited to claims where an official charge was made with a governmental agency (i.e., the EEOC or the DFEH), in which Somoon was named as an individual respondent. For matters that never proceeded beyond internal management or Human Resources, there is too great a likelihood that the complaint was motivated by employee animosity toward the boss (as Somoon was a manager in all of these jobs), and that the "claim" had no evidentiary support.

OfficeMax and GameStop have already responded to the subpoena, affirming that it has no responsive documents. While this might make the subpoenas to OfficeMax and GameStop moot with respect to past compliance, Somoon still asks the Court to include an order quashing or limiting these subpoenas' scope, to ensure that there are no continuing compliance obligations.

With respect to Orchard, counsel for Plaintiff advised Somoon's counsel on September 20, 2013 that his office, after sending a letter to Orchard that the subpoena had modified, had received some documents from Orchard. No copy of that letter was served on Somoon's counsel and Plaintiff's counsel later stated his was mistaken and no such letter has been sent. Despite the motion to quash and delivering that motion to quash to Orchard before production occurred, the deposition officer selected by Plaintiff's counsel (who is an agent for the subpoenaing party) demanded that Orchard produce responsive documents by the original return date. In fact, Orchard's counsel advised that the deposition officer called several times and harassed Orchard into producing the documents by incorrectly asserting that Orchard Supply was late and in violation of the subpoena. Orchard, believing it had a legal obligation to do so, produced documents in response to the original subpoena on September 17 and served objections to all requests. (See Exh. B). Plaintiff refused to return these inadvertently produced documents. The court should order Plaintiff to do so and to refrain from using any information contained in those documents. Orchard inadvertently produced three emails based on original terms of the subpoena to which Orchard has now objected. Orchard inadvertently produced three emails in response to the original terms of the subpoena, to which Orchard has now objected. However, if the subpoena were limited to racial slurs against African Americans, Orchard has represented to Somoon's counsel that it would view **none** of these inadvertently produced emails as responsive.

---

[2] A detailed analysis of this issue is set forth in Somoon's Motion to Quash, which was filed on September 13, 2013.



**III. Plaintiff's Position**

On a Motion to Quash, Defendant has the difficult burden of proving that the subpoenas are overly-broad, not-relevant, or privileged. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). He has not met his burden.

In *Oppenheimer Fund, Inc. v. Sanders*, the Supreme Court held, "[The] court should and ordinarily does interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." 437 U.S. 340, 351 (1978). Additionally, the Courts have held, "discovery should be allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). Baptiste's subpoena to OSH meets the relevancy standard above. The documents requested were drafted to elicit information showing Somoon's racial animosity, which is directly-relevant to Baptiste's causes of action.

Additionally, the subpoenas were issued based on Somoon's deposition testimony.[3] Somoon stated there were no allegations of unlawful harassment against him at OSH. The OSH documents directly contradict Defendant's claimed innocence, and evidence Somoon's racist attitude towards African-Americans.

Under Federal Rules 401 and 403, evidence is relevant if it tends to make the occurrence of a fact more or less likely, and all relevant evidence is admissible unless its probative value is substantially outweighed by the risk of undue prejudice. Moreover, the U.S. Supreme Court ruled in *Mendelsohn v. Sprint*, that whether or not "me too" evidence (evidence of racist behavior suffered by individuals other than the plaintiff) is relevant and admissible if, "fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory or the case." 128 S. Ct. 1140, 1147 (2008).

In the Ninth Circuit, a decision-maker's bigoted remarks may tend to show discriminatory intent ***even if directed at someone other than the Plaintiff***. *Metoyer v. Chassman*, 504 F3d 919, 937 (9th Cir. 2007); *Cordova v. State Farm Ins.*, 124 F3d 1145, 1149 (9th Cir. 1997). Bigoted remarks by a member of senior management may show discrimination even if directed at persons other than plaintiff.] Evidence of unlawful harassment directed at persons other than Plaintiff is admissible, even if Plaintiff is unaware of it ***as it goes to the motive*** behind whatever action was taken against the Plaintiff by Defendant. *Hurley v. Atlantic City Police Dept*., 174 F3d 95, 110 (3rd Cir. 1999). See also, *Josephs v. Pacific Bell*, 443 F3d 1050, 1064-1065 [earlier grievance proceedings involving similarly situated employees admissible in disability discrimination action.]

The Courts have consistently held, "privacy interests do not insulate personnel records from discovery." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604 (C.D. Cal. 1995); *Ashman v.*

---

[3] Somoon was deposed on June 24, 2013. Defendant was asked "At any of these places we've talked about—OSH, the non-profit, we talked about OfficeMax — *any kind of allegations* of any conduct on your behavior that may constitute *unlawful harassment*" and Somoon replied, "No." (Depo. Somoon 112:15-19; Exh. C)

view www.fddcm.com

*Solectron Corp.*, 2009 U.S. Dist. LEXIS 57040, 7, 2009 WL 1684725 (N.D. Cal. 2009). In *Ragge*, the Court confirmed Plaintiff could subpoena documents in Defendant's personnel file pertaining to disciplinary proceedings and complaints because it did not pertain to sexual, health or financial matters, areas considered to be private or confidential. *Id.* at 603-604. Here, the documents are not private because they do not pertain to sexual, health, or financial matters; it pertains only to complaints against Somoon for racist statements, slurs, and comments.

On September 4, 2013, OfficeMax produced a Certification of No Records. On September 12, 2013, GameStop faxed a Certification of No Records as well. Both locations responded prior to the Motion to Quash. Plaintiff's deposition officer never 'harassed' OSH. OSH served its objections *a week after it had already produced the documents*. OSH's objections were served untimely. In fact, Plaintiff's counsel was informed that OSH's in-house counsel was involved in producing the documents and was aware of the Motion to Quash *yet still produced the documents*. Plaintiff's counsel has not used or disseminated the documents, even to Plaintiff himself.

Plaintiff's counsel has not attached the documents to this letter since doing so would be improper. **However, Plaintiff's counsel can represent to the Court that the documents obtained from OSH show multiple complaints of racist comments made by Somoon against black people**[4]. In other words, the documents support Mr. Baptiste's allegations; for these reasons, the documents are plainly-relevant and do not present any danger of undue prejudice.

The Motion to Quash should be denied. This case is in the discovery phase and allowing Plaintiff to retain the documents, does not mean that Defendant is precluded from arguing the documents inadmissibility at trial. However, in the alternative, Plaintiff asks that the Court review the documents in camera to see how directly the documents prove racial animus on the part of Somoon. Mr. Baptiste contends that such a review is necessary under Federal Rules of Evidence 401 and 403. Lastly, if the Court grants the Motion to Quash, Plaintiff requests that it be granted without prejudice to Plaintiff calling at trial the individuals at Orchard Supply who heard Somoon's racist statements.

Very truly yours,

/s/ Daniel A. Croley
Daniel A. Croley
(415) 399-3845
dcroley@fddcm.com

/s/ Derek C. Decker
Derek C. Decker
(916) 565-8161
derek@radlegal.com

---

[4] Plaintiff's counsel can also represent that the documents do not invade anyone's privacy, other than identifying the individuals who heard Somoon make the comments, and do not pertain to any race other than African-American/black.