UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| CHRISTIAN RUIZ BAPTISTE,<br><br>    Plaintiff,<br> v.<br><br>LIDS; HAT WORLD, INC.; GENESCO, INC.;<br>MICHAEL SOMOON; and DOES 1-5 inclusive.<br><br>    Defendants.<br>_____/ | No. C-12-5209 PJH<br><br>**ORDER RE: JOINT DISCOVERY LETTERS**<br><br>**(Docket Nos. 31, 39, 40)** |

## I. INTRODUCTION

The parties submitted three joint letters detailing various discovery disputes (Dkt. Nos. 31, 39, 40). Having considered the parties' papers, relevant legal authority, and the record in this case, the Court addresses each of these disputes in turn below.

## II. BACKGROUND

Plaintiff Christian Ruiz Baptiste is a former employee of Hat World, Inc., employed at a Lids retail store in San Francisco for approximately 11 months between November 2007 until October 2008. Compl. ¶¶ 13, 22. In June 2008, Defendant Michael Somoon became Plaintiff's district manager. *Id.* ¶ 14. Plaintiff alleges that Somoon harassed him based on his race and made racist and derogatory comments to Plaintiff in reference to the fact that Plaintiff is half-black and dark-skinned. *Id.* ¶¶ 14, 16, 32. Plaintiff alleges that this behavior continued until Somoon and a San Francisco Police Officer physically and verbally threatened Plaintiff into signing a confession admitting he stole company merchandise. *Id.* ¶¶ 18-21. Hat World terminated Plaintiff's employment for theft on October 29, 2008. *Id.* ¶ 22. Plaintiff exhausted his administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and received a right to sue notice. *Id.* ¶ 30.

Plaintiff's Complaint contains two claims: (1) Racial discrimination and harassment in violation of Title VII (42 U.S.C. § 2000(e)) and (2) Racial discrimination under Civil Rights Act (42 U.S.C. § 1981). Compl. ¶¶ 12-32.

## III. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* A relevant matter is "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Moreover, discovery is not limited to only those specific issues raised in the pleadings since it is designed to define and clarify the issues in the case. *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992) (citing *Oppenheimer*, 437 U.S. at 351). As such, the question of relevancy should be construed "liberally and with common sense" and discovery should be allowed unless the information sought has no conceivable bearing on the case. *Id.* The party resisting discovery bears the burden of proving that disclosure is not required. *Soto v. City of Concord*, 162 F.R.D. 603, 609 (N.D. Cal. 1995).

## IV. DISCUSSION

A. <u>Defendant Michael Somoon's Motion to Quash Subpoenas</u>

On August 28, 2013, Plaintiff served subpoenas for the production of documents on three non-party companies: Orchard Supply Hardware Corporation ("Orchard Supply"); OfficeMax, Inc., and Gamestop, Inc. Jnt. Ltr. at 1, Dkt. No. 31, & Ex. A (subpoenas). Defendant Somoon worked at these companies both before and after working at Hat World as Plaintiff's district manager. Jnt. Ltr. at 1, Dkt. No. 31. Plaintiff's subpoenas seek 15 categories of documents falling into three groups:

- documents "relating to" "racial comments," "racial statements," or "racial slurs" made by Somoon during his employment (Request Nos. 1-3);
- documents "relating to" "complaints made against Somoon" "about use of" "racial comments," "racial statements," or "racial slurs" (Request Nos. 4-6) or about the use or threat of violence by Somoon against any employee (Request Nos. 10-11) or the use of intimidation against any employee (Request No. 14); and

2

- Documents relating to any disciplinary actions against Somoon because of the foregoing (Request Nos. 7-9; 12-13; 15).

Each subpoena set the return date as September 17, 2013. Jnt. Ltr. at 1, Dkt. No. 31. Defendant Somoon contends that the subpoenas should be quashed in their entirety, stating that they are overbroad, beyond the scope of permissible discovery, potentially violative of his and others' privacy rights, and fail to identify documents to be produced with "reasonable particularly" or documents likely to lead to the discovery of admissible evidence. *Id.* at 3. In the alternative, Defendant Somoon asks that the subpoenas be limited to use of racial slurs directed against African Americans and only for claims where an official charge was made with a governmental agency, like the EEOC. *Id.* Plaintiff argues that he should receive the subpoenaed documents they (1) "evidence Somoon's racist attitude towards African-Americans," and (2) contradict Defendant's deposition testimony when he answered "no" after being asked if there were any allegations of unlawful harassment against him while working at these three companies. *Id.* at 4.

All three of the subpoenaed companies have responded. OfficeMax and Gamestop both responded before Defendant's motion to quash that they have no responsive documents, submitting Certifications of No Records. *Id.* at 3, 5. Defendant asks the Court to nevertheless order that these subpoenas be quashed or limited to ensure that these companies have no continuing compliance obligations. *Id.* at 3. Orchard Supply also responded, producing some documents and also serving objections. *Id.* & Ex. B (Orchard Supply's Objections to Plaintiff Baptiste's Subpoena). According to Orchard Supply, it notified Plaintiff's counsel that it had inadvertently disclosed documents in response to the subpoena, despite the Defendant Somoon's pending motion to quash. *Id.*, Ex. B at 1.

i. The OfficeMax and GameStop Subpoenas

First, with regard to the OfficeMax and GameStop subpoenas, the Court notes Defendant provided no case law about quashing a subpoena after the subpoenaed party has already responded and submitted a Certification of No Records. Likewise, the Court has found no precedent for this situation. Defendant has acknowledged that the issue with these companies' past compliance with his subpoena is moot. Jnt. Ltr. at 3, Dkt. No. 31. In terms of any potential issues of "future compliance,"

3

1  Plaintiff has made no attempt to seek such additional compliance, nor indicates such plans to do so.
2  Because quashing these subpoenas now would have no practical collateral consequences on
3  discovery or the case, the Court agrees that the issue with respect to these subpoenas is moot. *Cf.*
4  *U.S. E.P.A. v. Alyeska Pipeline Serv. Co.*, 836 F.2d 443, 445 (9th Cir. 1988) (a subpoena appeal was
5  not moot where reversal would result in documents being returned); *E.E.O.C. v. Fed. Exp. Corp.*, 558
6  F.3d 842, 847 (9th Cir. 2009) (finding that a subpoena appeal is not mooted when the decision affects
7  numerous collateral circumstances). Accordingly, Defendant's motion to quash the subpoenas to
8  OfficeMax and GameStop is DENIED WITHOUT PREJUDICE. Should Plaintiff seek additional
9  compliance from these companies in the future, Defendant can raise the matter again at that time.

          ii. The Orchard Supply Subpoena

11  The Orchard Supply subpoena presents a different issue as the documents it produced in
12  response to Plaintiff's request could have collateral consequences. *See Reich v. Montana Sulphur &*
13  *Chem. Co.*, 32 F.3d 440, 443 n.4 (9th Cir. 1994) (holding that just because the subpoenaed party has
14  "produced most and possibly all of the documents required by the subpoena," that "does not render
15  the appeal moot, because our decision will still have collateral consequences"); *Church of*
16  *Scientology of Cal. v. United States*, 506 U.S. 9, 12-13 (1992) (reversing a Ninth Circuit decision
17  holding moot an appeal after the subpoenaed party complied and turned over requested tapes to the
18  IRS because the Court found that it could still order the IRS to return or destroy the tapes at issue).
19  As such, the Court will consider the Orchard Supply subpoena at this time.

20  The subpoena at issue generally requests information about any "racial comments," "racial
21  statements," or "racial slurs" made by Somoon during his employment with Orchard Supply. Racist
22  statements can constitute "direct evidence" of discrimination. *Aragon v. Republic Silver State*
23  *Disposal Inc.*, 292 F.3d 654, 662 (9th Cir. 2002) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217,
24  1221 (9th Cir. 1998) (where the decision-maker who denied plaintiff a position said that he "did not
25  want to deal with another female"); *Cordova v. State Farm Ins.*, 124 F.3d 1145, 1149 (9th Cir. 1997)
26  (employer referred to a Mexican-American employee as a "dumb Mexican"); *Lindahl v. Air France*,
27  930 F.2d 1434, 1439 (9th Cir. 1991) (employer stated that female candidates get "nervous" and

4

1  "easily upset"); *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1112 (9th Cir.
2  1991) (employer referred to plaintiff as an "old warhorse" and to her students as "little old ladies").
3  Direct evidence "is evidence which, if believed, proves the fact [of discriminatory animus] without
4  inference or presumption." *Aragon*, 292 F.3d at 662 (citing *Godwin*, 150 F.3d at 1221).

5        Plaintiff argues that his subpoena to Orchard Supply seeks evidence of Defendant Somoon's
6  alleged "racist attitude towards African-Americans." Jnt. Ltr. at 4, Dkt. No. 31. But as Defendant
7  points out, the subpoena is not limited to evidence of racial animus against African-Americans.
8  Instead, the subpoena seeks information about any racist comments made by Somoon while working
9  for Orchard Supply, regardless of whether such comments were targeted at the protected class of
10 which Plaintiff alleges he is a member. Defendant cites case law from the Seventh Circuit that
11 "evidence of generalized racism directed at others is not relevant unless it has some relationship with
12 the employment decision in question." *Grayson v. O'Neill*, 308 F.3d 808, 816 (7th Cir. 2002).
13 Likewise, under Ninth Circuit law, "[i]t is clear that an employer's conduct tending to demonstrate
14 hostility towards *a certain group* is both relevant and admissible where the employer's general
15 hostility towards that group is the true reason behind firing an employee who is a member of that
16 group." *Heyne v. Caruso*, 69 F.3d 1475, 1479 (9th Cir. 1995) (emphasis added); *see also*, *U.S. Postal*
17 *Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 713-14 n.2 (1983) (a decision-maker's generalized
18 derogatory remarks *about a particular group* is relevant to prove race discrimination); *Dominguez-*
19 *Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1038 (9th Cir. 2005) ("Where a decisionmaker makes a
20 discriminatory remark *against a member of the plaintiff's class*, a reasonable factfinder may conclude
21 that discriminatory animus played a role in the challenged decision.") (emphasis added); *accord*
22 *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (use of comments as evidence
23 of discrimination are limited to where the comments at issue are "related to the protected class of
24 persons of which the plaintiff is a member").

25       As Plaintiff's subpoena seeks potentially private information about Defendant, as well as non-
26 parties Orchard Supply and Orchard Supply employees, the Court finds that, balancing Plaintiff's
27 need for this information with the privacy interests of those involved, Plaintiff's subpoena should be
28

UNITED STATES DISTRICT COURT
For the Northern District of California

modified and limited in scope. *See Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604 (courts must balance a claimed privacy right against the need for the information). The Court ORDERS that Plaintiff's subpoena to Orchard Supply IS LIMITED to those documents which constitute evidence of Somoon's discriminatory animus against Plaintiff's protected class, identified as African-American.[1] The parties have not provided the Court with a copy of the document(s) produced by Orchard Supply. Thus, to the extent Orchard Supply has already provided Plaintiff with documents responsive to the Court's order, Plaintiff is allowed to keep those documents subject to the parties' stipulated Protective Order, entered June 21, 2013. *See Protective Order*, Dkt. No. 22. The Court orders that these documents be treated as "confidential" under that Protective Order and subject to the same rules, procedures, and protections as other documents designated as "confidential" under that Order. However, if the documents Orchard Supply has already produced to Plaintiff are unresponsive to this order, Plaintiff must promptly return all hard-copies of the documents and destroy any electronic copies of those documents.

    B. <u>Defendant Michael Somoon's Request for Production of Documents Regarding the "Mikey's Minutes" Email</u>

The parties' next dispute involves Plaintiff's Request for Production of Documents, No. 43, Set Three, which requested "all documents evidencing the most current known address, telephone number, and email for all Hat World, Inc.'s employees who received Somoon's email of January 8, 2009, otherwise known as "Mikey's Minutes." Jnt. Ltr. at 1, Dkt. No. 39, & Ex. 2 (served on July 23, 2013). Defendant Michael Somoon sent this "Mikey's Minutes" email approximately two months after Hat World terminated Plaintiff. Jnt. Ltr. at 1, Dkt. No. 39. The email went out to a number of Hat World employees, but Plaintiff was not among the recipients. *Id.* In this email, Defendant Somoon used the term "ghettofication" twice. *Id.* & Ex. 1. Two employees complained to Human

---

[1] In his Complaint, Plaintiff identified himself as "a dark skinned U.S. citizen of Puerto Rican and Haitian ancestry," and he alleges that Defendant Somoon discriminated against him because he was black and dark skinned. Compl. ¶¶ 12, 14. The parties' joint letter states that Plaintiff "claims Somoon harassed him because Plaintiff was an African-American." Jnt. Ltr. at 1, Dkt. No. 31.

1  Resources about the email, explaining that they and other employees interpreted Somoon to mean
2  that he did not want to turn the stores more "black" and that the email "offended" employees. *Id.*
3  Defendant Hat World objected to Plaintiff's Request for Production of Documents and refused to
4  provide a substantive response. *Id.* & Ex. 3 (Defendant Hat World's Response to Plaintiff's Request
5  for Production of Documents, Aug. 26, 2013).

6  Plaintiff now seeks to compel Defendant to provide the requested names and contact
7  information for the employees who received Somoon's "Mikey's Minutes" email. *Id.* Plaintiff
8  argues that the names and contact information for those employees are relevant as this information
9  "supports Plaintiff claims Somoon repeatedly used offensive, racial slurs to him." *Id.* at 2.
10 Defendant responds that its "current and former employees have a legitimate expectation of privacy
11 in their identity and residential contact information," and "the right to privacy of Defendant's
12 employees outweigh any speculative relevance of the information to Plaintiff." *Id.* at 4, 5.

13 Federal courts "ordinarily recognize a constitutionally-based right of privacy that can be
14 raised in response to discovery requests." *Nakagawa v. Regents of Univ. of Cal.*, 2008 WL 1808902,
15 at *2 (N.D. Cal. Apr. 22, 2008) (quoting *Megargee v. Wittman*, 2007 WL 2462097, at *2 (E.D. Cal.
16 2007)); (citing *Breed v. U.S. Dist. Ct. for N. Dist. of Cal.*, 542 F.2d 1114, 1116 (9th Cir. 1976)
17 (balancing the invasion of a minor's privacy rights against the court's need for ward files); *Ragge*,
18 165 F.R.D. at 604 ("Although the right to privacy is not a recognized privilege, many courts have
19 considered it in discovery disputes.")). Thus, in such disputes courts ordinarily balance the claimed
20 privacy right against the need for the information. *Ragge*, 165 F.R.D. at 604 (privacy rights in
21 personnel records "may, nevertheless, be invaded for litigation purposes.").

22 In some cases courts have found that names, addresses, and telephone numbers are
23 appropriate for production, "because such disclosure does not involve revelation of personal secrets,
24 intimate activities, or similar private information, which may constitute serious invasions of privacy."
25 *Murphy v. Target Corp.*, 2011 WL 2413439, at *4 (S.D. Cal. June 14, 2011) (ordering defendant to
26 produce the names, addresses, and telephone numbers of putative class members); *see also Tierno v.*
27 *Rite Aid Corp.*, 2008 WL 3287035, at *3 (N.D. Cal. July 31, 2008) (same). "The requested
28

7

information, while personal, is not particularly sensitive, as it is merely contact information, not medical or financial details, political affiliations, sexual relationships, or personnel information." *Puerto v. Superior Court*, 158 Cal. App. 4th 1242, 1253 (2008) (citations omitted). In *Puerto*, the defendant Wild Oats had designated certain of its employees as witnesses, but then sought to prevent plaintiffs from obtaining their contact information. *Id.* at 1253-54. The court agreed with plaintiffs that this information should be disclosed, as "[n]othing could be more ordinary in discovery than finding out the location of identified witnesses so that they may be contacted and additional investigation performed." *Id.* at 1254. The *Puerto* court acknowledged, however, that "[d]iscovery may be prohibited where the information violates the right to privacy and is not necessary to the prosecution of the matter." *Id.*

Here, Plaintiff seeks the names, addresses, and telephone numbers of Hat World employees who received an email sent by Defendant Somoon two months after Hat World terminated Plaintiff. Defendant has not made these employees witnesses and they have no connection to case like the putative class members in *Murphy* or *Tierno*. Instead, "[n]othing in the record suggests . . . the employees/former employees as to whom contact information is sought were witnesses to the discriminatory and retaliatory acts [Plaintiff] allegedly suffered." *Life Technologies Corp. v. Superior Court*, 197 Cal. App. 4th 640, 653 (2011). Balancing Plaintiff's purported need for the personal contact information of former and current Hat World employees against their privacy interests and Hat World's privacy interests, the Court DENIES Plaintiff's motion to compel on his Request for Production of Documents, No. 43, Set Three.

E. <u>Defendant Michael Somoon's Request for Production of Documents Relating to the Relationship Between Hat World, Inc. and Genesco</u>

The final dispute involves Plaintiff's Request for Production of Documents, Set Three, No. 49, which requested "all documents evidencing the relationship between Hat World, Inc. and Genesco, Inc." Jnt. Ltr. Coverpage, Dkt. No. 40, & Ex. 1 (Plaintiff's Request for Production of Documents, July 23, 2013). Plaintiff named both Hat World, Inc. and Genesco, Inc. as Defendants, and Hat World and Genesco's joint answer stated that Hat World is a subsidiary of Genesco. Jnt. Ltr.

at 1, Dkt. No. 40. Plaintiff's interest in these documents involves "assessing the parent/subsidiary relationship" between Genesco and Hat World "for liability purposes," explaining that "a parent company be held liable for its subsidiary's actions under various tests." *Id.* at 2-3.

Defendant objected to Plaintiff's request (*id.*, Ex. 2 (Aug. 26, 2013)), and the parties met and conferred on September 20, 2013. On September 23, 2013, Plaintiff proposed the following categories of documents to be produced:

1. Any agreements existing in 2008 and 2009 between Hat World and Genesco;
2. the agreement(s) by which Genesco purchased Hat World;
3. any agreements in 2008 and 2009 evidencing any control over Hat World by Genesco;
4. any documents from 2008 and 2009 showing how Hat World's payroll was handled, and where it is run out of;
5. any documents showing the location of Hat World's headquarters in 2008 and 2009;
6. any documents showing the location of Genesco's headquarters in 2008 and 2009;
7. any documents from 2008 and 2009 showing any interrelated clerical/accounting/administrative functions between Hat World and Genesco;
8. any documents from 2008 and 2009 showing the officers, directors, and shareholders of Hat World;
9. any documents from 2008 and 2009 showing the officers, directors, and shareholders of Genesco;
10. any documents from 2008 and 2009 showing any profits from Hat World that went to Genesco;
11. any documents from 2008 and 2009 showing any rules, policies, or procedures that Genesco directed Hat World to follow; and
12. any documents from 2008 and 2009 showing any involvement by Genesco in Hat World's hiring, firing, promotions, demotions, benefits, compensation, or any other employment matters.

*Id.* at 1, 4. Defendant responded that the requested categories were still overbroad, and Plaintiff sought to compel the production of these documents. *Id.* at 1.

On Thursday, October 17, 2013, the Court held a telephonic hearing on this dispute with counsel for Plaintiff and Hat World/Genesco. Pursuant to this hearing, Plaintiff's motion is GRANTED IN PART and DENIED IN PART. The Defendant is ordered to produce the following documents:

1. Any agreements existing in 2008 between Hat World and Genesco regarding employment practices;
2. any agreements in 2008 evidencing any control over Hat World by Genesco regarding employment practices;

9

3. any documents from 2008 showing any employment rules, policies, or procedures that Genesco directed Hat World to follow; and

4. any documents from 2008 showing any involvement by Genesco in Hat World's hiring, firing, promotions, demotions, benefits, compensation, or any other day-to-day employment matters.

At the telephonic hearing, Defendants' counsel represented that they will promptly comply with the Court's order, producing the documents as soon as reasonably possible.

## V.  CONCLUSION

For the reasons stated above, Defendant Somoon's request to quash subpoenas (Dkt. No. 31) is DENIED IN PART and GRANTED IN PART; Plaintiff's request for product of documents relating to the "Mikey's Minutes" email (Dkt. No. 39) is DENIED; and Plaintiff's request for product of documents concerning the relationship between Hat World and Genesco (Dkt. No. 40) is DENIED IN PART and GRANTED IN PART.

**IT IS SO ORDERED.**

Dated: October 18, 2013

_____
Maria-Elena James
United States Magistrate Judge